UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| 3535 LV NEWCO LLC, <br><br>           Plaintiff/Counter-Defendant, <br>     vs. <br><br>INT'L ALL. OF THEATRICAL STAGE EMPS., MOVING PICTURE TECHNICIANS, ARTISTS, AND ALLIED CRAFTS OF THE U.S, ITS TERRITORIES AND CAN., LOCAL 720, LAS VEGAS, NEV., <br><br>           Defendant/Counter-Claimant. | Case No.: 2:23-cv-01274-GMN-BNW <br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CONFIRMING ARBITRATION AWARD** |

Pending before the Court is the Motion for Summary Judgment ("MSJ"), (ECF No. 21), filed by Plaintiff/Counter-Defendant, 3535 LV Newco, LLC dba The Linq Resort and Casino (the "LINQ" or the "Employer"). Defendant/Counter-Claimant International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists, and Allied Crafts of the United States, Local 720 ("IATSE" or the "Union") filed a Response and Countermotion for Summary Judgment, (ECF No. 25), and Plaintiff filed a Reply, (ECF No. 28). For the reasons discussed below, the Court DENIES Plaintiff's Motion for Summary Judgment, GRANTS, in part, Defendant's Countermotion for Summary Judgment, and CONFIRMS the Arbitration Award.

I.      **BACKGROUND**

This case arises from an arbitration award regarding a dispute of whether a magician's assistant on Mat Franco's Magic Reinvented Nightly Show (the "Show") was performing IATSE bargaining unit work of a Stage Technician. (*See generally* Award, Ex. 3 to Pet., ECF No. 1-4); (*See generally* Pet. to Vacate Arbitration Award ("Pet."), ECF No. 1). Plaintiff

Employer and Defendant Union are signatories to a Collective Bargaining Agreement ("CBA"). (*See generally* CBA, Ex. 1 to Pet. App., ECF No. 1-2). Plaintiff operates a hotel and casino business in Las Vegas, Nevada and Defendant represents a bargaining unit of employees that consists of Stage Technicians. (Pet. ¶¶ 6, 9).

The Parties' CBA contains a three-step grievance and arbitration process that culminates in final and binding arbitration. (CBA at 15–16, Ex. 1 to Pet. App.). Following the Covid-19 pandemic, the Show was reformatted to include two new tricks. (Award at 4, Ex. 3 to Pet.). As a result of those new tricks, Defendant believed that Plaintiff violated the CBA by assigning bargaining unit work to non-bargaining unit personnel at the Mat Franco Showroom. (Grievance No. 2021-004 at 37, Ex. 1-B to MSJ App, ECF No. 22). Defendant subsequently filed a Grievance pursuant to the grievance and arbitration procedures of the CBA. (*Id.*). When the Arbitration process concluded, the Arbitrator issued his Opinion and Award in Defendant's favor. (*See generally* Award, Ex. 3 to Pet.). Plaintiff then filed the Petition to Vacate Arbitration Award in this Court. (*See generally* Pet.).

Plaintiff now moves for summary judgment on all its claims asserted in its Petition and on all claims asserted against it by Defendant in Defendant's Answer and Counterclaim ("Counterclaim"), (ECF No. 7). Defendant moves for cross summary judgment and for the Court to confirm the Award.

II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

return a verdict for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   DISCUSSION

Plaintiff moves for summary judgment on all its claims pled it the Petition and all of the counterclaims against it. Plaintiff's Motion for Summary Judgment requests an Order Vacating the Award on four grounds: (1) the Award violates public policy; (2) the Arbitrator exceeded his authority and jurisdiction; (3) the Award did not draw its essence from the terms of the

CBA; and (4) the Arbitrator manifestly disregarded the law. (*See generally* MSJ).  Defendant's Response asks the Court to confirm the Award on the merits and because Plaintiff's Petition is untimely and grant summary judgment to Defendant. (*See generally* Resp., ECF No. 25).  The Court begins by addressing the timeliness of the Petition before turning to the merits of the Parties' arguments.

**A. Petition's Timeliness**

Defendant argues that Plaintiff's Petition to Vacate the Award is untimely under the Federal Arbitration Act ("FAA") and the Labor Management Relations ("LMRA"). (Resp. 18:14–15).  To begin, the FAA generally does not apply to arbitration provisions in CBAs. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) (noting that the FAA's legislative history shows Congress did not intend the statute to apply to arbitration provisions in employment contracts, which includes CBAs).  As such, the Court will not address Defendant's arguments for untimeliness under the FAA and will instead address its arguments under the LMRA.[1]

Because there is no statute of limitations in LMRA Section 301, "the timeliness of a § 301 suit. . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–705 (1966). The Ninth Circuit has advised courts to "borrow the most closely analogous statute of limitations under state law." *Sheet Metal Workers Int'l v. Air Systems Eng'g, 831. F2d. 1509, 1511 (9th Cir. 1987).*  Therefore, the statute of limitations to file a petition to vacate an arbitration award under NRS § 38.241(2) applies in this case, and as such the motion "must be made within 90 days after the movant receives notice of the award pursuant to NRS § 38.236." *See* NRS § 38.241(2), 38.236.

---

[1] Even if the FAA applied to determining the timeliness of this matter, Defendant waived any right to assert such a defense by participating in the litigation for 11 months before raising such an issue to the Court. *U.S. v. Caldwell*, 859 F.2d 805, 806 (9th Cir. 1988) ("At the outset, it bears repeating that our court has held explicitly that the statute of limitations is not jurisdictional and can be waived."); *see also* Fed. R. Civ. Pro. 8.

Here, the Award was signed by the Arbitrator on May 15, 2023, and Plaintiff received a copy of the Award on May 19, 2023, when it arrived in the mail. (*See* Award at 15, Ex. 3 to Pet.); (*See* Kerr Decl. ¶ 2, 5, Ex. 1 to Reply, ECF No. 28-2). Defendant argues that Plaintiff's statutory period to challenge the Award under the LMRA lapsed on August 13, 2023—90 days after the Award was signed and 3 days before Plaintiff's Petition to Vacate was filed in this Court. But Plaintiff argues that the deadline to file the Petition to Vacate was August 17, 2023—90 days after it received notice of the Award. The Court agrees with Plaintiff's reading of the applicable statute. Indeed, NRS § 38.241(2) provides that a petition to vacate must be filed "90 days after the movant *receives notice* of the award." NRS § 38.241(2) (emphasis added). Plaintiff received notice of the Award on May 19, 2023, and had until August 17, 2023, to file a petition. Plaintiff's Petition was filed on August 16, 2023, and is therefore timely under the LMRA.

**B. Arbitration Award**

The Court now turns to the merits of the Parties' Motions. Section 301 of the LMRA governs this matter. Under Section 301, courts within the Ninth Circuit will only vacate arbitration awards under four circumstances:

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 530 (9th Cir. 2016) (internal quotation omitted). The Ninth Circuit recognizes that, "[b]ecause federal labor policy strongly favors the resolution of labor disputes through arbitration, [j]udicial scrutiny of an arbitrator's decision is extremely limited." *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1111 (9th Cir. 2012) (internal quotations omitted). Accordingly, "[a]rbitration

awards are ordinarily upheld so long as they represent a plausible interpretation of the contract." *Matthews*, 688 F.3d at 1111 (citation omitted).

Plaintiff's Petition and Motion for Summary Judgment asks for an Order Vacating the Award on four grounds, three of which are based on the circumstances articulated in *Drywall Dynamics*: (1) the Award violates public policy; (2) the Arbitrator exceeded his authority and jurisdiction; (3) the Award did not draw its essence from the terms of the CBA; and (4) the Arbitrator manifestly disregarded the law. (*See generally* Pet.); (*see generally* MSJ).  The Court takes up each argument in turn.

### 1. Public Policy

Plaintiff argues that the Court should vacate the Award because it violates public policy considerations. (MSJ 13:15).  Vacatur of an arbitration award is justified when the award is contrary to public policy. *Drywall Dynamics, Inc.*, 823 F.3d at 530.  To vacate an arbitration award on public policy grounds in the Ninth Circuit, a court must "(1) find that an explicit, well-defined and dominant public policy exists . . . and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." *Matthews*, 688 F.3d at 1111 (quoting *United Food & Com. Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995)) (internal quotation marks omitted).  The alleged public policy must be "'ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *E. Associated Coal Corp. v. United Mine Workers of Am., Dist.* 17, 531 U.S. 57, 62 (2000) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)).  In cases where the arbitration award compels a party to violate the law, the arbitration award demonstrates a clear violation of public policy. *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1211 (9th Cir. 1989) (citing *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir. 1982) (explaining arbitration award will not be enforced if it would force a party

to perform a manifestly illegal act)). "The party seeking to vacate the arbitration award bears the burden of showing that the arbitration award violates an explicit, dominant and well-defined public policy." *United Food & Comm. Workers Int'l Union, Local 588,* 74 F.3d at 174 (internal quotation marks omitted). "[T]he public policy exception is narrow," *E. Associated Coal Corp..,* 531 U.S. at 63, and "courts should be reluctant to vacate arbitral awards on public policy grounds," *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995).

Plaintiff argues that the Award violates public policy because it mandates Plaintiff to make contributions to the Union's Health and Welfare Fund without a written agreement in violation of the LMRA. (MSJ 14:7–9). Section 302(a) of the LMRA provides: "It shall be *unlawful* for any employer . . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value" to "any representative of any of his employees" or "to any labor organization." 29 U.S.C. § 186(a) (emphasis added). The LMRA contains a limited exception, however, whereby an employer, like Plaintiff, can make contribution payments to a Taft-Hartley Trust established "for the sole and exclusive benefit of the employees of such employer, and their families and dependents." 29 U.S.C. § 186(a), (c). To satisfy this exception there must also be a written agreement with the employer specifying "the detailed basis on which such payments are to be made." 29 U.S.C. § 186(c)(5)(B). The requirement for a detailed written agreement is based in statute and designed to prevent bribery and corruption. *Maxwell v. Lucky Construction Co., Inc.*, 710 F.2d 1395, 1398 (9th Cir. 1983).

Article 8 of the CBA is the only written document that authorizes contributions to the Union's Health & Welfare Fund. (*See* CBA at 12, Ex. 1-A to Pl.'s App., ECF No. 22); (*see also* Successor CBA at 12, Ex. 1-E to Pl.'s App., ECF No. 22). Pursuant to Section 8.02 of the CBA, Plaintiff is required to make contributions for health care costs "for all hours worked or paid to any employee covered by [the CBA]." (*See* CBA at 12, Ex. 1-A to Pl.'s App.); (*see also* Successor CBA at 12, Ex. 1-E to Pl.'s App.). Plaintiff first argues that the CBA specifies the

*maximum* amount that Plaintiff is required to contribute on behalf of covered employees who elect the IATSE Health and Welfare Fund. (MSJ 6:21–24). However, the CBA explicitly states that "[t]he *minimum* rate of contributions to be made by the Employer . . . shall be $4.39" and "$5.88" in the original CBA and successor CBA respectively. (*See* CBA at 12, Ex. 1-A to Pl.'s App.); (*see also* Successor CBA at 12, Ex. 1-E to Pl.'s App.). Plaintiff argues that it did not agree to remit contributions at a rate beyond those specified in the CBA. But the CBA makes clear that Plaintiff and Defendant entered into a written agreement that set forth a minimum contribution rate, not a maximum one. Thus, Plaintiff's argument that it did not enter into an agreement to remit contributions over the specified rate is unavailing and fails to establish how the Award violates public policy considerations.

Next, Plaintiff asserts that there is no written agreement requiring it to make contributions on behalf of imaginary individuals. (MSJ 17:1–3). While Plaintiff fails to identify what part of the Award requires it to take such actions, the Court believes that Plaintiff is referring to the second remedy in the Award but does not agree with Plaintiff's assertion. The Arbitrator ordered Plaintiff to "contribute to the IATSE National Health and Welfare Fund an amount of money equivalent to the total hourly compensation package of Stage Technician who if employed and operating the hand-held camera during the performance would be entitled." (Award at 69, Ex. 1-D to MSJ App., ECF No. 22). To address Plaintiff's argument, the contribution is not on behalf of an imaginary individual, it is on behalf of someone employed as a Stage Technician. (*Id.*). Plaintiff does not explain how a Stage Technician qualifies as an "imaginary person," nor does it offer any case law to support its argument. Plaintiff does cite 29 USC § 186(c)(5)(A), to argue that it would be illegal for Plaintiff and Defendant to negotiate on behalf of non-bargaining unit employees not represented by the Union or to make contributions that are not paid for the direct benefit of employees, but it does not explain how the Arbitrator's Award is in conflict with § 186(c)(5)(A). (MSJ at n.27). The

CBA provides that "the Employer recognizes the Union as the sole and exclusive collective bargaining representative of *all* [Stage Technicians]." (CBA at 6, Ex. 1 to Pet. App.) (emphasis added). This provision therefore necessitates that all Stage Technicians are covered by the CBA and are thus bargaining unit employees. Accordingly, the remedy provided for in the Award does not require Plaintiff to negotiate with non-bargaining employees because the Award applies to Stage Technicians who are necessarily covered by the CBA.

Plaintiff further avers that the written agreement does not authorize it to remit contributions in perpetuity for work not covered by the CBA. (MSJ 17:1–3). The remedy provides: "This contribution will be calculated as follows: six hours for each Mat Franco Magic Reinvented Nightly show performed since the resumption of performances after the Covid shutdown, and continuing for as long as any Magi performer is operating the hand-held video camera as part of his or her role in the show." (Award at 69, Ex. 1-D to App.). The Court disagrees with Plaintiff's position that the remedy remains in effect in perpetuity. The remedy provides a clear cut off: it will "continue[] for as long as any Magi performer is operating the hand-held video camera as part of his or her role in the show." (*Id*.). Accordingly, the Court finds that the Award does not violate public policy considerations because it does not infringe upon the written agreement between the two parties and does not violate any law. Thus, Plaintiff has failed to meet its burden at the summary judgment stage as to this justification for vacatur.

### 2. Arbitrator's Authority & Jurisdiction

Next, Plaintiff argues that the Court should enter an Order vacating the Award because the Arbitrator exceed his authority and jurisdiction. (MSJ 19:1). Vacatur of an arbitration award is justified when arbitrators exceed the scope of their authority or exceed the boundaries of the issues submitted to them. *Drywall Dynamics, Inc.*, 823 F.3d at 530. It is a fundamental principal of labor arbitration that the CBA negotiated between parties sets forth the limits on

the authority of the arbitrator to hear and decide disputes. *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

Plaintiff presents numerous arguments for the Court to consider when determining whether the Arbitrator exceeded his authority and jurisdiction. Plaintiff begins by arguing that the Arbitrator exceeded his jurisdiction and authority when he decided an issue that was not presented to him. (MSJ 19:13–15). Per the CBA's terms and Ninth Circuit precedent, Plaintiff argues, the Arbitrator can only consider the specific issue presented to him. (MSJ 19:13–15). Plaintiff avers that the scope of the issue presented to the Arbitrator was limited to determining whether the Magic Assistant was performing bargaining unit work and whether the hand-held camera work needed to be returned to the Union. (*Id.* 20:2–4). According to Plaintiff, the Arbitrator exceeded his authority when he determined whether Plaintiff's failure to bargain or impose unilateral changes violated the CBA. (*Id.* 20:4–6). Stated differently, Plaintiff believes the issue before the Arbitrator was whether the results of reformatting the Show violated the CBA, and not whether the process Plaintiff used to reformat the Show violated the CBA. Plaintiff ultimately contends that by deciding an issue regarding the process rather than the results, the Arbitrator knowingly exceeded the bounds of the issue presented to him and addressed an issue that ventures into the jurisdiction of the National Labor Relations Board ("NLRB").[2] (*Id.* 11:2–6, 23:10–11).

To begin, Plaintiff does not put forth evidence nor case law to establish that any part of the Award was meant to be decided under the sole authority of the NLRB. In fact, Plaintiff argues that the Arbitrator exceeded his jurisdiction when he alluded to a specific article within the CBA when deciding whether the CBA had been violated. (MSJ 22:8–19). Importantly, the

---

[2] Plaintiff also maintains that "[t]he Arbitrator even acknowledged that neither side raised the issue of 'unilateral change' before him or presented any evidence regarding the communications or circumstances surrounding the change to the show." (MSJ 17–19). But at no point in the Award does the Arbitrator "acknowledge" that the parties do not raise the issue of "unilateral change." (*See generally* Award, Ex. 1-D to App. to MSJ). Instead, the Arbitrator sets forth the positions of both sides. (*Id.*).

CBA allows for a violation of any CBA provision to be submitted to arbitration after the proper procedure is followed. (CBA at 76).  Thus, the Arbitrator did not exceed his jurisdiction when issuing the Award.

Now the Court turns to Plaintiff's argument that the Arbitrator exceeded his authority when deciding an issue not explicitly submitted to him.  Plaintiff asserts that pursuant to Article 10.02(a) of the CBA, when a matter reaches the arbitration stage, "[t]he written demand for arbitration shall set forth the grievance to be arbitrated, the Section or Sections of this Agreement alleged to have been violated, and the relief sought." (CBA at 20, Ex. 1-A to App). When this matter reached the arbitration stage, Defendant submitted the following issue to the Arbitrator: "Did the Employer violate the [CBA] by allowing non-bargaining unit personnel to perform bargaining unit work relating to the operation of video cameras at the Mat Franco Theater?" (Award at 69, Ex. 1-D to App.).  And Plaintiff submitted a similar issue stated as: "Did the LINQ violate the [CBA] by having a Magic Assistant play the character of a video operator to perform magic tricks during [the Show]?" (*Id*.).  Because the two Parties could not agree on the wording of the issue, they asked that the Arbitrator frame it. (*Id*.).  Thus, the Arbitrator framed the issue as follows: "[Did] the post Covid resumption of performances in the Mat Franco Showroom, at which time the show was reformatted to have a [Magic Assistant] operate the hand-held video camera instead of an IATSE bargaining unit member, cause the Company to be in violation of the CBA?" (*Id*.).

"The scope of the arbitrator's jurisdiction extends to issues not only explicitly raised by the parties, but all issues implicit within the submission agreement." *Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 733 (9th Cir. 2006).  Here, the Parties did not agree on the issue to be presented to the Arbitrator and as such, they consented to the Arbitrator framing the issue.  The issue to be decided at arbitration was ". . . *at which time the show was reformatted to have a Magi operate the hand-held video camera instead of an IATSE bargaining unit*

member, cause the Company to be in violation of the CBA?" (Award at 69, Ex. 1-D to App.). The issue framed by the Arbitrator implies that the reformatting of the Show would be scrutinized and was therefore not outside the scope of the Arbitrator's jurisdiction or authority. *Schoenduve Corp.*, 442 F.3d at 733.

Furthermore, "the arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits." *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir.1989) (citing *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir.1993) ("In determining whether the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration.")). The CBA requires that the "arbitrator's award shall be based solely upon the arbitrator's interpretation of the meaning or application of provisions of this Agreement." (CBA at 20, Ex. 1-D to MSJ App.). The Award lists applicable CBA provisions implicated in the arbitration process and alludes to the CBA in its discussion. (*See generally* Award, Ex. 1-D to MSJ App.). Thus, the Arbitrator did not exceed his authority or jurisdiction when issuing the Award and the Court resolves all doubts in favor of the arbitration.

Plaintiff next argues that the Arbitrator exceeded his authority and jurisdiction by issuing a remedy that was inconsistent with the Parties' proposed remedies. (MSJ 21:6–22–19). Indeed, "an arbitrator has no authority to ignore the plain language of a CBA that limits the scope of his authority." *Hawaii Teamsters & Allied Workers Union, Loc. 996 v. United Parcel Serv.*, 241 F.3d 1177 (9th Cir. 2001). Even so, "[a]n arbitrator is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not expressed in it.'" S*FIC Props., Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94*, 103 F.3d 923, 925 (9th Cir. 1996) (quoting *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1497 (9th Cir.1990)).

Here, the Grievance requested at Arbitration was a cease and desist and make whole remedy entailing that Plaintiff employ four bargaining unit personnel and pay back all wages and benefits for the displaced workers. (Grievance No. 2021-004 at 37, Ex. 1-B to MSJ App, ECF No. 22). The Arbitrator considered the presented remedies and concluded that "it is not possible nor fair to either party to fashion a remedy which either returns all the covered work to the Union nor divides the [Magi's] functions. . . in some equitable way." (Award at 80, Ex. 1-D to MSJ App.). Arbitrators are allowed to apply common law principles when determining an arbitration award, which the Arbitrator did when discussing the remedy he imposed. *SFIC Props., Inc.*, 103 F.3d at 925. Thus, the Court is unpersuaded by this argument.

Plaintiff lastly argues that the Arbitrator exceeded his authority and jurisdiction when he altered, amended, changed and/or modified the conditions, procedures and contribution amounts specified in the CBA. (MSJ 23:17–19, 24:25–27). But for the reasons discussed above in the Public Policy section, the Court is unpersuaded that the Arbitrator altered, amended, changed and/or modified the conditions, procedures and contribution amounts specified in the CBA.

In sum, Plaintiff has failed to meet its burden at the summary judgment stage as to this justification for vacatur.

### 3. Essence of the CBA

Plaintiff further argues that the Court should enter an Order vacating the Award because it does not draw its essence from the CBA and is based on the Arbitrator's own sense of industrial justice. (MSJ 15:4–6). Vacatur of an arbitration award is justified when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice. *Drywall Dynamics, Inc.*, 823 F.3d at 530. This justification for vacatur is "reserved for those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he 'manifestly

disregarded' the contours of the bargain expressed in outline by the collective bargaining agreement." *Stead Motors of Walnut Creek*, 886 F.2d at 1205–1206 at n.6 (internal quotation omitted).

Plaintiff argues that the Arbitrator's Award does not draw its essence from the CBA, in large part, for the same reasons it argues that the Arbitrator violated public policy and exceeded his authority and jurisdiction. (MSJ 24:24–26:9). For the same reasons discussed above, the Court disagrees with Plaintiff's contentions. Accordingly, Plaintiff has failed to meet its burden at the summary judgment stage as to this justification for vacatur as well.

### 4. Disregard for the Law

Lastly, Plaintiff contends that the Court should enter an Order vacating the Award because the Arbitrator manifestly disregarded the law. (MSJ 28:5–6). "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (internal quotations omitted). To vacate an arbitration award on this ground, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id*. Here, Plaintiff argues that the Arbitrator manifestly disregarded the Taft-Hartley Act and the LMRA (MSJ 28:10–21). The Court disagrees and refers to its above discussion where it found that the Arbitrator did not violate any applicable laws. Thus, Plaintiff has failed to meet its burden at the summary judgment stage as to this justification for vacatur.

In sum, Plaintiff's Motion for Summary Judgment requesting that the Award be vacated, is DENIED. Pursuant to 9 U.S.C. § 9, if the motion to vacate is denied, the motion to confirm must be granted. Accordingly, Defendant's Countermotion for Summary Judgment is GRANTED, in part, and the Award is CONFIRMED. To the extent that Defendant's Response

and Countermotion for Summary Judgment moves for Attorney's Fees, Defendant is instructed to file a motion in accordance with Local Rule IC 2-2(b) and 54-14.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 21), is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Countermotion for Summary Judgment, (ECF No. 25) is **GRANTED, in part**, and **DENIED, in part.**  The Court grants Defendant's request to confirm the Award but denies without prejudice Defendant's request for Attorney's Fees.

**IT IS FURTHER ORDERED** that the Arbitration Award at issue is **CONFIRMED**. The Clerk of Court is kindly directed to enter judgment for Defendant and close the case.

**DATED** this __11__ day of March, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court